UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 11, 2012

LETTER TO COUNSEL

    RE:    Philip A. Thompson v. Michael J. Astrue, Commissioner of Social Security;
               Civil No. SAG-11-942

Dear Counsel:

This matter is before me by the parties' consent. [ECF Nos. 6, 10]. On April 12, 2011, claimant Philip A. Thompson petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment [ECF Nos. 15 and 18]. I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I will DENY Mr. Thompson's motion for summary judgment and will GRANT the Commissioner's motion. This letter explains my rationale.

Mr. Thompson filed his claim for DIB and SSI on November 20, 2007, alleging disability due to HIV, depression, high cholesterol, and chronic diarrhea. (Tr. 137, 195). Mr. Thompson initially alleged a disability onset date of November 30, 2006, but has since amended his alleged onset date to June 1, 2008. (Tr. 137, 154). The Appeals Council denied Mr. Thompson's request for review (Tr. 1-5), so the December 23, 2009 decision of Administrative Law Judge William F. Clark ("the ALJ") is the final, reviewable decision of the agency.

The ALJ determined that Mr. Thompson retained the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he must have ready access to restrooms and an option to sit or stand at will." (Tr. 72). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Thompson can perform jobs that exist in significant numbers in the national economy, and that he is not therefore disabled. (Tr. 78-79).

As Mr. Thompson's HIV, high cholesterol, and depression appear to be well-managed, he contests the agency's decision only as it relates to his chronic diarrhea and related symptoms. While his summary judgment motion sets forth six arguments, Mr. Thompson essentially claims

that the ALJ erred in three ways: by failing to give appropriate weight to the medical opinion of nurse practitioner Anna Brown; by failing to properly consider Mr. Thompson's subjective complaints; and by presenting an incomplete hypothetical question to the VE. Pl.'s Mem. in Supp. of Summ. J. 14-15. Mr. Thompson also asserts that the Appeals Council erred by failing to consider the supplemental written argument that counsel submitted on January 14, 2011. Pl.'s Mem. 2.

1. **The ALJ Properly Considered the Opinion of Anna Brown, C.R.N.P.**

Mr. Thompson argues that nurse practitioner Brown's opinion should be given controlling weight because she "is clearly a treating doctor and has a long-standing treatment relationship with Mr. Thompson." Pl.'s Mem. 23-24. Mr. Thompson also suggests that there was no reasonable basis for the ALJ to disregard nurse practitioner Brown's opinion in this case. *Id*. These arguments are ineffective.

When determining whether a claimant is disabled, the agency will evaluate every medical opinion it receives in a claimant's case. 20 C.F.R. § 404.1527(c). Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)." 20 C.F.R. § 404.1527(a)(2). Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). Nurse practitioners are not acceptable medical sources; rather, they are "other sources." 20 C.F.R. § 404.1513(d). The agency may choose to use evidence from other sources to evaluate the severity of a claimant's impairments and how those impairments affect the claimant's ability to work, but it is not required to do so. *Id*.; *see also* SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006) ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose."). However, the agency has also recognized that

> [M]edical sources who are not 'acceptable medical sources,' such as nurse practitioners . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians . . . . Opinions from these medical sources . . . are important and should be evaluated on key issues such as severity and functional effects, along with the other relevant evidence in the file.

*Id*. at *3.

A treating source is a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. A treating source's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ chose to assign nurse practitioner Brown's opinion little weight, noting that

> The opinion of Anna Brown, the claimant's treating nurse practitioner, is accorded little weight because she is not an acceptable medical source . . . . In the present case, Ms. Brown's assessment appears to be more based on the claimant's reported symptoms and limitations rather than objective findings and diagnostic test results . . . as well as the fact that other treating sources and specialists have not suggested that the claimant cannot work at all, as well as the opinions of treating source and specialists who have said that the claimant can work with the aforesaid restrictions. Indeed, in March 2009 Ms. Brown recommended that the claimant do volunteer work "to provide more structure and purpose to his day [and] increase energy."

(Tr. 76-77). The ALJ correctly states, and Mr. Thompson concedes, that Anna Brown's opinion is not that of an acceptable medical source. Pl.'s Mem. 23. Because nurse practitioner Brown is not an acceptable medical source, the ALJ could not consider her a treating source whose opinion could be entitled to controlling weight.[1] The ALJ did, however, consider nurse practitioner Brown's opinion regarding the severity and effects of Mr. Thompson's chronic diarrhea. His opinion demonstrates that he would have likely have assigned little weight to nurse practitioner Brown's opinion even if she could be considered an acceptable medical source. The ALJ rejected nurse practitioner Brown's opinion in great part because it appeared to be "more based on the claimant's reported symptoms and limitations rather than objective findings." (Tr. 77).

In addition, the ALJ's opinion is supported by substantial evidence, namely, the opinions of several state medical consultants that Mr. Thompson is able to work with certain limitations, and Mr. Thompson's ability to manage his symptoms while on family vacation and other trips. The ALJ's decision to adopt the opinions of the state consultants is in accordance with SSR 96-6p, which provides that an ALJ may afford great weight to non-examining state agency physicians' opinions. When conflicting evidence is presented, the ALJ retains the discretion to resolve such inconsistencies. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). It is clear that the ALJ did so here. Because substantial evidence supports the ALJ's analysis, remand is unwarranted.

   **2. The ALJ Properly Assessed Mr. Thompson's Credibility.**

Mr. Thompson next contends that the ALJ improperly analyzed his subjective complaints

---

[1] Mr. Thompson notes that

> Perhaps it could be argued that it would not be appropriate to consider an NP's opinion in a particular case if a claimant were also treating with an M.D. who could address the medical issues. Here, however, Dr. Brown is the only medical source available . . . and her medical care is all that he has access to at present.

Pl.'s Mot. 23. Mr. Thompson's suggestion of what agency regulations ought to be runs counter to a plain reading of those regulations. Agency regulations regarding the acceptability of nurse practitioners' opinions are not conditioned upon the presence or absence of other medical opinions.

of fatigue, arguing that the ALJ improperly assessed both Mr. Thompson's credibility and his compliance with medical treatment. Mr. Thompson testified that he naps for at least three hours each day. (Tr. 46). He also testified that his fatigue is caused by diarrhea. (Tr. 21 ("It makes it hard after bouts with diarrhea to even stay awake due to fatigue.")). Because the ALJ supported his finding with substantial evidence, Mr. Thompson's argument is unavailing.

The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints, such as fatigue. *Chater*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id.* at 595.

In this case, the ALJ found that Mr. Thompson's medically determinable impairments "could reasonably be expected to cause a degree of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects to these symptoms are not [entirely] credible." (Tr. 73). The ALJ based this conclusion on an extensive discussion of Mr. Thompson's medical records and testimony, as well as the testimony of his companion, Ms. Phyllis Fitzpatrick. The ALJ did rely, in part, on medical records dated *before* Mr. Thompson's amended onset date that suggest that Mr. Thompson's persistent diarrhea has several causes, including his diet. (Tr. 73-74). However, the ALJ also considered evidence dated *after* the amended onset date, including the medical opinions of state agency physicians and treating health care professionals, as well as evidence relating to Mr. Thompson's diet and daily activities. (Tr. 73-76). The evidence shows that Mr. Thompson's dietary choices, though much improved, continued to run counter to the advice of his medical professionals even after his June 1, 2008 amended onset date. (*See, e.g.*, Tr. 333, 336) ("urged to [discontinue] nightly Chips Ahoy cookies (limits to 6)"), ("[he] reports dizziness on arising that self-resolves w/ 3 cups of caffeinated coffee"). The ALJ also relied on Mr. Thompson's testimony that he could work at a job that had ready access to a bathroom.[2] (Tr. 38). For all these reasons, the ALJ determined that Mr. Thompson's complaints were not entirely credible with respect to the severity of his symptoms. The ALJ's findings were sufficiently detailed, and are supported by substantial evidence. Remand on the basis of the ALJ's credibility assessment is inappropriate.[3]

---

[2] The relevant excerpt from the hearing transcript follows:

> Q: So what kind of work have you looked for, actually?
> A: Gas station attendant, something I could be close to a restroom, you know, that would involve just sitting there with the bathroom right there, you know in the booth. Basically that's about it. I really don't like to leave the house.
> Q: Could you do a job like that?
> A: If I could find one, yeah. I'd love to have some income.

(Tr. 38).

[3] Though remand is inappropriate, the ALJ's assessment of Mr. Thompson's credibility does contain two troubling conclusions. First, the ALJ states without medical support that "the claimant is drinking too much fluid, which logically contributes significantly to his loose, watery stool." (Tr. 74). That assertion is, in fact, contrary to customary medical treatment of diarrhea and the dehydration that often accompanies diarrhea. Second, the ALJ contends that Ms. Fitzpatrick's financial support of the claimant "suggests that there may be other reasons for his not working besides his alleged medical problems." (Tr. 76). This assertion is inappropriate because it is purely

### 3. The ALJ Provided an Appropriate Hypothetical to the VE and Properly Accounted for Mr. Thompson's Limitations in His RFC.

Mr. Thompson also asserts that the ALJ provided a faulty hypothetical to the VE by failing to reference Mr. Thompson's fatigue and the amount of time he spends in the bathroom. Mr. Thompson further claims that the ALJ's RFC assessment was tainted by this improper hypothetical. Both of these arguments fail.

To support his contentions, Mr. Thompson relies on his own testimony and on nurse practitioner Brown's functional assessment, both of which describe Mr. Thompson's fatigue and the hours he must spend in the bathroom each day. (Tr. 21, 46, 328). This reliance is misplaced. The ALJ accorded little weight to nurse practitioner Brown's medical opinion, and found that Mr. Thompson's testimony was not credible with regards to the extent of his subjective complaints. As I have already explained, substantial evidence supports the ALJ's evaluation of both Mr. Thompson's credibility and nurse practitioner Brown's medical opinion. Furthermore, there is no objective medical evidence that substantiates either Mr. Thompson's testimony or nurse practitioner Brown's functional assessment regarding fatigue and hours spent in the bathroom. As a result, it was not error for the ALJ to omit the disputed limitations from the RFC. Indeed, the RFC accommodates Mr. Thompson's substantiated subjective complaints by restricting him to jobs that allow "ready access to restrooms and an option to sit or stand at will." (Tr. 72). Furthermore, this RFC is in keeping with Mr. Thompson's own testimony regarding of his work restrictions: that he could work if he had easy access to a bathroom and the ability to sit down at will. (Tr. 38). Because substantial evidence supports the ALJ's decision to discount Mr. Thompson's testimony and nurse practitioner Brown's medical opinion, remand is unwarranted on the basis of the hypothetical presented to the VE or the RFC assessment.

### 4. The Appeals Council Properly Denied Mr. Thompson's Request for Review.

Finally, Mr. Thompson suggests that the Appeals Council improperly reviewed his appeal by (i) failing to consider the April 13, 2010 medical report form completed by nurse practitioner Anna Brown; and (ii) failing to consider the written arguments submitted by counsel on January 14, 2011. Pl.'s Mot. 2. To support these contentions, Mr. Thompson notes that the Appeals Council's denial consisted of a "form letter" containing "no substantive analysis." *Id*. These arguments are without merit.

Agency regulations state that, "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence . . . ." 20 C.F.R. § 404.970(b). Evidence is "new" if it is not duplicative or cumulative. *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Upon request, the Appeals Council must give all parties "a reasonable opportunity to file briefs or other written statements about the facts and law relevant to the case." 20 C.F.R. § 404.975. However, the Fourth Circuit has recently held that, "if upon consideration of all of the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review." *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir.

---

speculative. These conclusions, though improper, do not infect the remainder of the ALJ's credibility analysis, which was supported by substantial evidence.

2011). "[N]othing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." *Id*.

Contrary to Mr. Thompson's assertions, the additional argument submitted to the Appeals Council is not akin to new and material evidence. Pl.'s Mem. 3. It is well-settled that the arguments of counsel are not evidence. 22 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5163 (1st ed. 1969). Furthermore, nurse practitioner Brown's April 2010 medical report may not actually constitute new and material evidence. Indeed, this report summarizes information already in evidence, specifically, Mr. Thompson's medical history, symptoms, and diagnoses, as well as nurse practitioner Brown's opinion regarding Mr. Thompson's ability to work. (*Compare* Tr. 363-366 *with* Tr. 327-31). In any event, the Appeals Council considered nurse practitioner Brown's report when evaluating the case. (*See* Tr. 1, 4). While the Appeals Council is obligated to consider new and material evidence along with the other evidence already in the record when it evaluates a case, the Fourth Circuit has explained that the Appeals Council need not explain its rationale for denying review. The Notice of Appeals Council Action that Mr. Thompson received was not lacking. Remand is unnecessary.

For the reasons set forth herein, Plaintiff's motion for summary judgment [ECF No. 15] will be DENIED and Defendant's motion for summary judgment [ECF No. 18] will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge